# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | | |
|---|---|---|
| **JERRY L. CAIN** | * | **CIVIL ACTION NO. 04-2075** |
| **VERSUS** | * | **JUDGE JAMES** |
| **JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Plaintiff, Jerry L. Cain ("Cain"), appeals from a decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits for the period between December 22, 1992, through November 26, 1997. The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons given below, it is recommended that the decision of the Commissioner be **AFFIRMED, and this matter dismissed with prejudice.**

Introduction

Cain, who is currently fifty-six years old, applied for disability benefits for the period between his forty-fifth and forty-ninth years. He has a high school education, and his primary work experience is as a fire captain and firefighter. Cain retired from firefighting in 1992 and later endured two hospitalizations from repeatedly being exposed to smoke, pain, and synthetic fumes.

This case has a complicated and prolonged history due to multiple hearings and appeals. On August 26, 1994[1], Cain applied for disability benefits due to lung disease, limited range of motion of the right shoulder, spondylosis and lumbar disc problems, neck and back pain, and difficulty sleeping. Following a hearing on October 1, 1996, an Administrative Law Judge ("ALJ") denied

---

[1] Cain filed a prior application on September 10, 1993; however, the claim was denied, and no request for reconsideration was filed.

Cain's claim; however, the Appeals Council, remanded the case for another hearing after it found that the ALJ did not address a treating physician's opinion that Cain was disabled, environmental limitations, and the side effects of Cain's medication. A second hearing was held on August 23, 1999, and an ALJ held that Cain was disabled only as of November 26, 1997, his fiftieth birthday. Although the Appeals Council affirmed the ALJ's finding that Cain was disabled as of his fiftieth birthday, it, again, remanded the case for further proceedings on whether he was disabled prior to that date. The Appeals Council noted that many of the same shortcomings from the first decision still existed in the second ALJ decision. After a third hearing on March 13, 2003, an ALJ, yet again, found that Cain was not disabled prior to his fiftieth birthday, and as with the prior hearings, the Appeals Council remanded the case. The Appeals Council cited the absence of an evaluation of two physicians' opinions, Cain's subjective complaints, and his residual functional capacity ("RFC"). The final hearing, which resulted in another denial of disability benefits and is the subject of this appeal, was held on November 21, 2003. The Appeals Council did not find that any of the prior problems existed in the resulting decision and denied Cain's request for review.

Standard of Review; Substantial Evidence

This Court will uphold an ALJ's determination that a claimant is not disabled if the findings of fact upon which it is based are supported by substantial evidence, and if it was derived from a proper application of relevant legal standards. *See* 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir.

1988).

Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Secretary of Health and Human Services has established a five-step sequential evaluation process for ALJs to utilize in determining whether a claimant is disabled under the SSA. *See* 20 C.F.R. §§ 404.1520, 416.920. The United States Court of Appeals for the Fifth Circuit, in *Loza v. Apfel*, succinctly summarized this evaluation process:

> The first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities. In the third step, the medical evidence of the claimant's impairment(s) is compared to a list of impairments presumed severe enough to preclude any gainful activity. If the claimant's impairment matches or is equal to one of the listed impairments, he qualifies for benefits without further inquiry. If the person cannot qualify under the listings, the evaluation proceeds to the fourth and fifth steps. At these steps, analysis is made of whether the person can do his own past work or any other work that exists in the national economy, in view of his age, education, and work experience. If he cannot do his past work or

3

other work, the claimant qualifies for benefits.

219 F.3d 378, 390 (5th Cir. 2000) (internal citations omitted). The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). If at any point during the five-step review the ALJ finds the claimant disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In this case, Cain alleges the following points of error in the third, fourth, and fifth steps of analysis above: (1) the ALJ wrongfully rejected or ignored various physicians' opinions; (2) with respect to his testimony and that of his wife, the ALJ made an improper credibility assessment and failed to consider his testimony about his medications' side effects; and (3) the ALJ ignored the vocational expert's opinion, when posed with a hypothetical from his attorney, that he could not perform light sedentary work. None of these contentions are persuasive.

Rejection of Physicians' Opinion

Cain alleges that the ALJ wrongfully (1) rejected Dr. Adu R. Ebrahim's ("Ebrahim") opinion that his impairments met or equaled those described at sections 1.02, 3.02, and 3.03 of 20 C.F.R. Part 404, Subpt. P, App. 1 (hereinafter "Listing"), (2) rejected Dr. Antti G. Maran's ("Maran") opinion that he is unable to work at any employment, and (3) ignored nearly all of the opinions of his orthopedic physicians, Dr. Scott Irby ("Irby") and Dr. Douglas N. Liles ("Liles"). The Commission's regulations provide a detailed outline of how an ALJ is to review and weigh

4

the opinions of physicians. *See* 20 C.F.R. § 404.1527. An ALJ must evaluate every medical opinion, whether from a non-examining or treating physician, according to the following factors: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors such as familiarity with the Commission's standards and procedures. *See id.* at (d). Furthermore, each opinion is weighed equally, except for those from treating sources which may receive controlling weight provided that they are well-supported by medically acceptable techniques and not inconsistent with substantial evidence in the case. *Id.* at (d)(2). If an opinion from a treating physician is not supported by the evidence, then an ALJ is free to determine the appropriate weight based on the above factors as well as the nature, length, and frequency of the treatment relationship. *Id.* The Fifth Circuit has repeatedly held, though, that at any point in the evaluation of a claim an ALJ may reject a physician's opinion if the evidence supports a contrary conclusion. *See Spellman v. Shalala*, 1 F.3d 357, 364-65 (5th Cir. 1993); *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1994). Finally, physicians' opinions on an issue reserved to the Commissioner, such as whether a claimant is "disabled" or "unable to work," are not considered medical opinions, and regardless of who they are from, they are given no special significance. 20 C.F.R. § 404.1527(e).

Turning to the record, the ALJ rejected both physicians' opinions with good cause and after noting the substantial countervailing evidence. As for Ebrahim, he is not a treating physician but rather a medical expert that the ALJ selected to review Cain's medical records, and therefore his opinions are not owed any controlling weight. After reviewing Cain's records, Ebrahim concluded that since 1992 Cain suffered from chronic pulmonary insufficiency, asthma, and a major dysfunction of a joint as described in the Listing. Tr. 573. In a medical assessment

5

form, however, he indicated that Cain could lift/carry 20 pounds occasionally; stand/walk for at least 2 hours in an 8 hour day; had no limitations in sitting; could never perform postural activities; could not perform overhead reaching, pushing or pulling with his right arm; and could not work in extreme temperatures, around dust, fumes, odors, chemicals, gases, or other hazards. Tr. 577-80.

The ALJ noted all of Ebrahim's opinions, but found that they were either based on insufficient evidence or not of the requisite severity under the Listing. Tr. 23-24 Specifically, the ALJ noted that Ebrahim's conclusion about Cain's pulmonary impairments was based on a review of a single pulmonary function study that occurred during a period of significant exacerbation and that Ebrahim failed to acknowledge Cain's subsequent improvement after bronchodilator treatment. Other medical evaluations between 1993 and 1996, the ALJ noted, demonstrate that Cain "has no more than moderate limitations in airflow, with FEVI, DLCO, and FVC levels well above the listing level." Tr. 24. A review of the record proves this to be true: nearly all of the records compiled by Maran, Cain's treating pulmonary physician, show that Cain would occasionally suffer periods of exacerbation, but would ultimately respond favorably to treatment. Tr. 294-3135; 360-377. As for Ebrahim's opinion that Cain's musculoskeletal impairments met those in section 1.02 of the Listing, the ALJ properly rejected this opinion after noting that Cain regained the use of the upper extremity after corrective surgery and therefore did not satisfy the 12 month duration requirement for a disability under 42 U.S.C. § 423(d)(1)(A). In sum, the ALJ gave appropriate consideration and weight to Ebrahim's opinions, but properly rejected his conclusions after noting substantial contrary evidence in the record.

Although Cain also challenges the ALJ's rejection of Maran's opinion that he was

6

disabled and unable to work at any employment, an opinion different from his previous assessments, the ALJ gave it appropriate weight after a careful review of the evidence. First, Maran's opinion, which conflicted with his earlier assessments of Cain's disability and ability to work, appears to be an opinion on an issue reserved to the Commissioner and therefore is not entitled to any special significance. *See* 20 C.F.R. § 404.1527(e). Second, the ALJ fully explained why he rejected Maran's opinion as speculative and unsupported. The ALJ acknowledged that Maran's new opinion was based on debilitative exacerbations that various environmental triggers would cause; however, the ALJ rejected this basis after noting that Cain had suffered less than five major exacerbations and had responded favorably to treatment each time. Tr.25, 360-380. Rather than rejecting all of Maran's opinions, the ALJ accepted Maran's earlier assessments and specific work restrictions, including his opinion that Cain could sit for eight hours continuously, walk for two hours per day, perform fine manipulations, simple grasping, and push/pull functions with his upper extremities. Tr. 311-312, 389-390. Despite being a treating physician, Maran's opinions were properly rejected when compared to the substantial contrary evidence in the record. Furthermore, the ALJ's discussion of Ebrahim's and Maran's opinions confirms that he considered the factors set out in the Commission's regulations, namely the consistency and supportability of the opinions. *See* 20 C.F.R. § 404.1527(d).

With respect to the opinions of his orthopedic physicians, Irby and Liles, Cain argues that the ALJ ignored Irby's findings in a report dated August 25, 1994, and Liles findings in an assessment dated December 6, 1994. Both physicians' reports indicated that Cain suffered from lumbar spondylosis, limited shoulder movement due to surgery, and an inability to sit for more than 1 hour at a time. Tr. 270, 289. Interestingly, in its last remand of this case the Appeals

7

Council cited as a basis for its decision the prior ALJ's failure to address the findings in Irby's report. Tr. 565. While the ALJ decision presently before the Court also does not specifically refer to Irby's report, this omission is saved by the ALJ's statement, understandable in a case with such a prolonged procedural history, that "[c]laimant's medical history through November 26, 1997 is adequately summarized in the previous [ALJs'] decisions. Relevant information is incorporated herein, and this decision will focus mainly upon evidence obtained pursuant to the remand order(s)." Tr. 22. Moreover, the ALJ cited later reports from both physicians that reaffirmed their earlier findings, and he stated that "the opinions of the examining physicians, including Dr. Irby, are afforded great weight." Tr. 22-23, 25. In fact, the reductions in the ALJ's RFC determination, which included "no more than occasional climbing, crouching, balancing, stooping, kneeling, and crawling . . . the need to sit/stand at will; no overhead work with the right upper extremity," reflects his consideration of the findings in the allegedly ignored reports. Tr. 25. A review of the record and the ALJ's ultimate conclusions after the case's third remand simply does not show that he ignored or improperly rejected Cain's orthopedic physicians' opinions.

Cain raises two final arguments regarding the ALJ's treatment of his treating physicians' opinions: (1) before rejecting the opinions, the ALJ should have performed the six-factor analysis the Fifth Circuit described in *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000)[2], and (2)

---

[2] These factors, which are an elaboration of those described in 20 C.F.R. § 404.1527(d), include (i) length of the treatment and frequency of examination; (ii) the nature and extent of the treatment relationship; (iii) the relevant evidence such as medical signs and laboratory findings to support the opinions; (iv) the consistency of the particular opinion with the rest of the record as a whole; (v) whether the medical opinion is given by a specialist about medical issues related to his area of specialty; and (vi) any other relevant factors. *Newton*, 209 F.3d at 456-57.

pursuant to Social Security Ruling ("SSR") 96-5p, the ALJ should have sought clarification of the opinions from the physicians. As to Cain's first point, *Newton* does not apply when there is conflicting first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is better supported than another, or when the ALJ weighs the treating physician's opinion on disability against the medical opinion of other treating physicians who have developed contrary opinions based on scientific medical evidence. *See Newton*, 209 F.3d at 258. Additionally, *Newton* applies only to medical opinions rendered by a treating physician, not to a legal opinion that the claimant is disabled or unable to work. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). The ALJ was not required to apply the *Newton* analysis to Ebrahim's opinions as he is not a treating physician, nor to Maran's opinion that Cain was disabled and unable to work as this is merely a legal opinion. To the extent that the ALJ rejected Cain's orthopedic physicians' opinions and Maran's remaining medical opinions, the ALJ cited other conflicting opinions from each physician. Although the ALJ relied on conflicting opinions from the physicians themselves, the undersigned finds that this resolution of conflicting evidence parallels the first situation in which *Newton* does not apply: when conflicting first-hand evidence exists and the ALJ finds as a factual matter that one doctor's opinion is better supported than another. *See Newton*, 209 F.3d at 258; *see also Martinez v. Chater*, 64 F.3d 172, 174 ("The Commissioner, rather than the court, must resolve conflicts in the evidence."). Thus, the ALJ did not err in declining to apply the six-factor *Newton* analysis to the treating physicians' opinions.

Cain's argument that the ALJ should have sought clarification of the physicians' opinions must also fail. As support for his position, Cain cites Social Security Ruling 96-5p, which provides:

9

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

Soc. Sec. Rul. 96-5p, at *7, 1995 WL 670415 (S.S.A). The Commission counters that, according to its regulations, an ALJ need only obtain additional evidence when "[he does] not have sufficient evidence to decide whether you are disabled, or, if after weighing the evidence [he] decide[s] [he] cannot reach a conclusion about whether you are disabled." 20 C.F.R. § 404.1527(c)(3). SSR 96-5p appears to add, as another requirement to the Commission's regulation, that clarification must be obtained when the evidence is unsupportive of a treating source's opinion. This, however, does not eliminate the requirement that the ALJ must also be unable to ascertain the basis of the treating source's opinion. *See* SSR 96-5p, *7 ("evidence does not support a treating source's opinion . . . *and* the adjudicator cannot ascertain the basis of the opinion") (emphasis added); *see also Alejandro v. Barnhart*, 291 F.Supp. 2d 497, 512 (S.D. Tex. 2003) ("SSR 96-5p does not say that ALJs must recontact a treating physician whenever the record as a whole . . . fails to support his opinions."). This is crucial to Cain's argument because the ALJ never stated and it is not apparent from a reading of the record that he was confused about the basis of the physicians' opinions. Instead, the ALJ remarked that Maran based his opinion that Cain was disabled on the "possibility of environmental triggers causing exacerbations of [Cain's] condition," Tr. 25, and that the orthopedic physicians' opinions, which the ALJ accepted and factored into his RFC determination, were based on either treatment, surgery, or independent physical examinations. Tr. 22-23. The only colorable claim of confusion pertains to Ebrahim's opinion that Cain's impairments equaled those in the Listing and the ALJ's comment that Ebrahim "appears to cite one pulmonary function study in support of his opinion."

Tr. 23. Even if this is evidence of the ALJ's confusion, however, the ALJ had already requested further clarification from Ebrahim via letter and thus acted in accordance with SSR 96-5p. Tr. 586.

Credibility Assessment and Rejection of Testimony

Cain claims that the ALJ made an improper credibility assessment with respect to his and his wife's testimony, that the ALJ wrongly rejected his wife's testimony without providing specific reasons therefor, and that the ALJ failed to address testimony regarding his medication's side effects.[3] In turning to the testimony of Cain and his wife in the decision, the ALJ acknowledged that "he must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. § 404.1529, and Social Security Ruling 96-7p." Tr. 24. He then went on to summarize Cain's testimony and subjective complaints of pain and his ability to work, including the statement that "[Cain] also has side effects from his multiple medications, including difficulty sleeping, heart racing, diarrhea, and nausea." Tr. 24. Importantly, the ALJ finished his summary by also noting that "[Cain's] wife confirmed this testimony." Tr. 24. In the next section, the ALJ concluded that "these limitations by the claimant are *generally credible*, but not to the extent alleged," and went on to discuss at length how the objective medical evidence supported his conclusion. Tr. 25 (emphasis added).

All of Cain's claims implicate the discretion afforded to an ALJ to determine the disabling

---

[3] Cain also alleges that "the ALJ failed to take into consideration the uncontroverted medical evidence of the plaintiff's wife who is a registered nurse and rejected her testimony . . ." Pl.'s Br., p.6. To the extent that Cain implies that his wife's testimony, as that of a registered nurse, is entitled to special weight, the Commission's regulations do not list registered nurses as acceptable medical sources and therefore the ALJ properly treated her as a lay witness. *See* 20 C.F.R § 404.1513(a).

11

nature of a claimant's subjective complaints of pain and to assess witnesses' credibility. *See* 20 C.F.R. § 404.1529; *Jones v. Heckler*, 702 F.2d 616, 621-22 (5th Cir. 1983); *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981). While an ALJ may not completely dismiss and make no findings on a claimant's subjective complaints of pain, neither must he blindly accept such complaints nor even make specific credibility findings on every piece of testimony. *See* 20 C.F.R. § 404.1529; *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). In addition to the testimony of a claimant and other corroborating witnesses, "there must be medical signs and findings . . . which show the existence of a medical impairment that results from . . . abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which . . . would lead to a conclusion that the individual is under a disability." 42 U.S.C. § 423(d)(5)(A).

A review of the ALJ's decision, specifically the portion summarized above, demonstrates that he considered all of the testimony, including Cain's, his wife's, and that pertaining to the side effects of Cain's medication. While the ALJ did not single out Cain's wife's testimony for a credibility determination, he acknowledged her corroboration, and it is obvious that he concluded that the medical evidence did not support her conclusions to the extent alleged. The ALJ's credibility determinations are entitled to great deference, *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000), and the record supports those findings.

<u>Vocational Expert's Opinion</u>

Finally, Cain claims that the ALJ erred in concluding that he could work as an "order clerk" or "charge account clerk" because a vocational expert testified at the hearing that "Cain's inability to maintain attention for two (2) hour periods . . . as well as his inability to report timely to work would negate the jobs they identified in their testimony." Pl.'s Br., p.10. To determine

12

whether Cain could do work other than what he had performed in the past, the ALJ propounded several hypotheticals to Joni Crayton ("Crayton"), a vocational expert. Tr. 115-120. Through these hypotheticals, some which involved an individual with Cain's RFC and others which incorporated additional limitations, the ALJ asked Crayton to determine what employment would be available to someone having those disabilities. In response to a question involving an individual with Cain's RFC, Crayton opined that the individual could work as an "order clerk" or "charge account clerk." Tr. 117. Cain's attorney, in his questioning of Crayton, then mentioned additional disabilities, including "the inability to maintain attention for extended periods of two-hour segments." Tr. 120. In response, Crayton admitted that this disability would preclude an individual from engaging in any competitive work. Tr. 120.

Cain's cites this answer as evidence of the ALJ's erroneous conclusion regarding available jobs in the national economy. However, as the Commission properly notes, an ALJ is not bound by a vocational expert's opinion based on assumed disabilities which are not in fact part of a claimant's RFC. *See Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985). The ALJ never included the inability to maintain attention for two-hour segments in his RFC assessment.[4] While the RFC does state that the claimant is "moderately limited in the ability to maintain

---

[4] The ALJ exact RFC assessment was the following:
> [S]edentary work, reduced by the follwing: no more than occasional climbing, crouching, balancing, stooping, kneeling, and crawling; avoidance of even moderate exposures to fumes, dust, gas, etc.; avoidance of extreme temperature changes; the need to sit/stand at will; no overhead work with the right upper extremity (claimant is right-hand dominant); inability to perform tasks requiring binocular vision with resultant limitations in depth perception and peripheral vision (but claimant can avoid normal hazards in the workplace); and claimant is moderately limited in the ability to maintain attention and concentration for extended periods.

Tr. 25.

13

attention and concentration for extended periods," the ALJ defined "moderate" as involving "some moderate limitations, but the person can still perform the task satisfactorily." Any attempt to equate this limitation with an inability to maintain attention for two-hour segments is nothing more than a gross mischaracterization of the ALJ's RFC assessment. Therefore, the ALJ properly ignored the vocational expert's opinion based on an inaccurate hypothetical.

Conclusion

The record shows that the ALJ's decision is supported by substantial evidence. The ALJ gave full consideration to all of the physicians' opinions, but ultimately was forced to resolve various conflicts in the evidence and to weigh the witnesses' credibility. Additionally, the ALJ properly ignored those opinions either not supported by medical evidence or not based on an accurate statement of the record. None of the ALJ's decisions appear based on insubstantial evidence or an improper application of the relevant legal standards.

**For the reasons stated above, it is recommended that the Commissioner's decision to deny benefits for the time period in question be AFFIRMED, and that this civil action be DISMISSED with Prejudice.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

**REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 24th day of October, 2005.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE